**Ex parte Paul E. DELCOURT, Relator.**

No. 01–93–00862–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 18, 1993.

Rehearing Overruled Nov. 29, 1993.

Shawn Casey, Houston, for relator.

Roland C. Kemp, Houston, for real party in interest.

Before DUGGAN, MIRABAL and ANDELL, JJ.

**OPINION**

DUGGAN, Justice.

On September 27, 1993, the trial court found relator, Paul Edward Delcourt, in contempt of its September 10, 1992 agreed temporary order (the order), and ordered him committed to the Harris County jail for 50 days. Relator petitioned this Court for a writ of habeas corpus to secure his discharge from custody under the September 27, 1993 order. We released him on bond pending our hearing of his petition. On October 25, 1993, relator was incarcerated again, pursuant to a new commitment order issued October 11, 1993, for violation of the order. We granted relator's motion for leave to file a supplemental petition addressing the validity of the October 11 order and released him from jail under his original bail, pending our

hearing of both his original and supplemental petitions for writs of habeas corpus. Real party in interest, Dianne McKinney Delcourt (Mrs. Delcourt), has timely filed her answer to relator's supplemental petition.

### 1. Factual Background

On September 10, 1992, the trial court signed "Agreed Temporary Orders" providing for temporary managing and temporary possessory conservatorship of the children of the marriage, visitation with the children, and mutual injunctions forbidding relator and Mrs. Delcourt from engaging in certain types of conduct. In the order, the court ruled that, for the time being, it would not order relator to pay child support because it found that he was currently unemployed. It did, however, order relator to:

> pay the automobile note on the 1991 Ford Escort, by mailing a check in the amount of $273.29, payable to "Ford Motor Credit", to the attention of Ginger Hammon, 5199 West Ellsworth, Ann Arbor, Michigan 48103 on the 20th of each month, beginning on September 20, 1992, and continuing in the same amount on the 20th day of each month thereafter, until and including April 20, 1993, or until further order of the Court.

Mrs. Delcourt filed a "First Amended Motion For Enforcement of Temporary Orders By Contempt," alleging that relator had violated the court's September 10, 1992 order on 88 separate occasions. For each of these violations, Mrs. Delcourt requested that relator be held in contempt, jailed, and fined. In one section of her motion for contempt, Mrs. Delcourt alleged relator had violated the agreed temporary order by failing, in the months of September 1992 through January 1993, to comply with the order's provision that he pay to Ford Motor Credit the monthly note payment of $273.29. The motion prayed for a judgment awarding the arrearage plus interest, attorney's fees, and costs.

On July 16, 1993, Mrs. Delcourt served relator with the "First Amended Motion For Enforcement of Temporary Orders By Contempt" and an order to appear for a hearing on the motion on July 27, 1993. The hearing apparently did not occur. On September 14, 1993, Mrs. Delcourt served relator with the identical "First Amended Motion For Enforcement of Temporary Orders By Contempt," together with a notice directing relator to appear and respond to the motion on September 27, 1993. Relator filed a motion in abatement, complaining that under TEX. FAM.CODE ANN. § 14.315 (Vernon Supp. 1993),[1] he was entitled to have until the Monday next after the expiration of 20 days from the date of service to answer the motion.

In his appearance before the court on September 27, relator pointed out that Mrs. Delcourt had requested a money judgment in addition to contempt sanctions, and argued that the request entitled him to the statutory notice provided in section 14.315. The court inquired if this was a contempt proceeding in a pending case. When told by counsel for Mrs. Delcourt that it was, the court stated that it would not enter a judgment until the case was finally disposed of; Mrs. Delcourt waived her request for judgment. The court then denied relator's motion for abatement, proceeded to hear the contempt matter, found relator in contempt, and signed the September 27 order committing relator to jail.

After this Court released relator on bond pending our hearing of his petition for writ of habeas corpus, the trial court, on October 11, 1993, signed a second commitment order based upon the September 27 hearing on Mrs. Delcourt's motion for contempt. This order found relator in contempt for transferring Mrs. Delcourt's organ to relator's brother, in violation of the portion of the September 10, 1992 order prohibiting the parties from transferring personal property without court order. For this violation, the court

---

1. Section 14.315 provides in pertinent part:
   (a) Contents. If a motion for enforcement has been joined with other claims, the court shall order the time, place, and date of the hearing at which the respondent shall appear and respond to the motion....

   (b) Hearing. The hearing may be held no sooner than 10 a.m. of the Monday next after the expiration of 20 days after the date of service.

sentenced relator to 30–days confinement, "commencing eleven (11) days after [relator's] release from confinement under [the trial court's] previous Commitment Order, dated and signed September 27, 1993...."

### 2. The September 27th Commitment Order

In his first ground, relator asserts the September 27 commitment order is void because it violates TEX. CONST. article I, section 18, which prohibits imprisonment for debt.

The September 27 order finds relator in contempt "in that he failed and refused to make support payments in defiance of [the September 10, 1992 agreed temporary order] ... and further that the unpaid *auto note payments* under said order as of this date is the sum of $1,396.45." (Emphasis added.)

■ Obligations to make note payments are not enforceable by contempt because to do so would amount to imprisonment for debt in violation of TEX. CONST. article 1, section 18. *Ex parte Yates*, 387 S.W.2d 377, 380 (Tex.1965); *Whitt v. Whitt*, 684 S.W.2d 731, 735 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Ex parte Duncan*, 462 S.W.2d 336, 338 (Tex.Civ.App.—Houston [1st Dist.] 1970, orig. proceeding).

■ In *Whitt*, the trial court issued temporary orders, ordering Mr. Whitt to make the note payments on the house. *Whitt*, 684 S.W.2d at 733. When he failed to do so, Mrs. Whitt brought contempt charges against him. *Id.* at 734. The Fourteenth Court of Appeals declined to find Mr. Whitt in contempt for failing to make the house note payments, stating that if the trial court had characterized the note payments as temporary support pending the appeal, it might well have reached a different result. Similarly, in this case, if the court had characterized the $273.29 monthly payments ordered in the September 10, 1992 order as temporary spousal support, this Court might also have reached a different result. However, because the court's order specifically states that it is not ordering "support," but does order relator to "pay the automobile note," the September 27, 1993 commitment order decreeing that relator be incarcerated for not making those note payments is void.

Relator is entitled to release from custody under the September 27, 1993 order.

### 3. The October 11, 1993 Commitment Order

Relator asserts that the October 11, 1993 commitment order is void because although he was charged with 88 counts of contempt that could have resulted in 44 years imprisonment, the court did not inform him of a right to a jury trial, in violation of the sixth amendment to the United States Constitution. We disagree.

■ Petty contempt may be tried without a jury. *Taylor v. Hughes*, 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974). Contempt of court is a petty offense when the penalty actually imposed does not exceed six months or a longer penalty has not been expressly authorized by statute. *Id.*; *Ex parte Papageorgiou*, 685 S.W.2d 776, 779 (Tex.App.—Houston [1st Dist.] 1985, orig. proceeding).

In its October 11, 1993 commitment order, the trial court assessed relator's confinement at less than six months. The statute authorizing his confinement does not expressly authorize imprisonment for a period of more than six months. *See* TEX.GOV'T CODE ANN. § 21.002(b) (Vernon 1988). Therefore, under the authority of *Taylor*, relator was not entitled to jury trial of his contempt charge.

The cases relator relies upon are distinguishable from this case in that in each of them, the sentence actually imposed involved a period of confinement that exceeded six months or a period of confinement and a fine of a significant magnitude. In *Ex parte Sproull*, 815 S.W.2d 250 (Tex.1991), Mr. Sproull was sentenced to 22–years confinement. *Id.* In *Ex parte Griffin*, 682 S.W.2d 261 (Tex.1984), the trial court sentenced Mr. Griffin to 30 days imprisonment and a $104,-000 fine. In *Ex parte McNemee*, 605 S.W.2d 353, 355 (Tex.App.—El Paso 1980, orig. proceeding), Mr. McNemee was sentenced to 336 days in jail.

We overrule relator's sixth amendment contention.

In his other ground for release from custody, relator asserts the October 11, 1993 commitment order is void because his due process rights under the fourteenth amendment to the United States Constitution were violated in that the trial court did not give him adequate notice in accordance with TEX.FAM. CODE ANN. § 14.315 (Vernon Supp.1993). Specifically, relator contends that because he was served with Mrs. Delcourt's "First Amended Motion for Enforcement of Temporary Orders By Contempt" on September 14, 1993, he was entitled under section 14.315 to have the hearing held no sooner than October 11, 1993 (the Monday next after the expiration of 20 days from the date he was served).

 When sections 14.31 and 14.315 are read together, it is plain that the notice provisions of section 14.315 apply to *post*-divorce enforcement proceedings. Section 14.31 provides that "enforcement proceedings under this subchapter shall be commenced by filing a motion to enforce a *final order, judgment,* or *decree.*" (Emphasis added.) The notice provision for enforcement of temporary orders in a suit affecting the parent-child relationship is TEX.FAM.CODE ANN. § 11.11(h) (Vernon Supp.1993), which provides:

> When enforcement of an order is sought by a motion for contempt, the respondent shall be personally served with notice directing the respondent to appear for a hearing at a designated time and place.

Section 11.11(h) does not specify how much notice the alleged contemnor is to receive, and we have found no cases addressing the length of notice to be given under it. However, in *Ex parte Murphy*, 669 S.W.2d 320 (Tex.Crim.App.1983), five days was found to be sufficient notice to allow the alleged contemnor a fair opportunity to defend against the constructive contempt charges of failing to attend a pretrial hearing and to appear for a trial on the merits. *Id.* at 321.

 In the case before us, relator was served with the contempt motion on July 16, and therefore had notice of the contempt charges against him for two months. He had 13 days notice of the hearing on those contempt charges. We hold this was adequate notice. Accordingly, we overrule relator's inadequate notice challenge.

We order relator discharged from custody under the trial court's September 27, 1993 commitment order. However, because we hold that the trial court's commitment order of October 11, 1993 is not void, relator must comply with its terms. Because that order directs him to report to the Sheriff of Harris County, Texas, 11 days after his discharge under the September 27, 1993 commitment order, and we have today discharged him under the September 27th order, he will report to the Sheriff of Harris County, 11 days from today, or on November 29, 1993, to serve his sentence under the October 11, 1993 commitment order.