**In re Robert E. LOZANO, Jr., Relator.**

**No. 01–06–00655–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 14, 2006.

Liza A. Greene, Houston, TX, for Appellant.

Ray Epps, Houston, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

■ Relator Robert E. Lozano has filed a petition for writ of mandamus challenging the trial court's [1] April 27, 2006 order of civil and criminal contempt for failure to pay spousal maintenance and home mortgage installments.[2] In five issues, Robert complains that (1) the order of contempt is void because the underlying decree lacks specificity; (2) the trial court abused its discretion in holding Robert in contempt for failure to pay spousal maintenance; (3) the trial court abused its discretion in holding Robert in contempt for failure to make payments in the nature of a debt; (4) the trial court abused its discretion by entering a judgment in an amount not supported by the pleadings; and (5) the trial court abused its discretion in denying Robert's motion for new trial.

We conditionally grant the petition for writ of mandamus.

## Background

Robert and Jody Lozano were married in 1997, and Jody petitioned for divorce in March of 2005. On April 14, 2005, the trial court entered "Agreed Temporary Orders" providing that Robert was to pay spousal support to Jody in the amount of $1,384 per month, as a salary from the family-owned business, and to pay "all community debts, including the house payment, utilities, car note, and all other fixed debt and/or credit card debt." The temporary orders were to "continue in full force until the signing of the Final Decree of Divorce or until further order of [the trial court]."

On December 1, 2005, the trial court entered an "Agreed Final Decree of Divorce," in which Jody was awarded the house as her sole and separate property. Under "Special Provision—House Sale," the decree provides that the "basic temporary orders shall remain in full force and effect until the wife sells the home and closes thereon." Under "Additional Orders," the decree provides that "the Temporary Orders in this case rendered on or about April 14, 2005, shall remain in full force and effect, until the house . . . is sold and closing has occurred [with certain exceptions]." The decree does not order Jody to sell the house.

From February 2006 to March 2006, Robert failed to pay certain spousal support payments, house payments, and utilities payments. On March 29, Jody filed a "Petition for Enforcement of Spousal Maintenance." On April 27, after a hearing, the trial court found that Robert had violated the provisions of the final decree by having failed to pay five installments of spousal support and two installments on the house note. The trial court held Robert in criminal contempt, sentencing him to 60 days in the Harris County jail for having committed each of the seven violations. In addition, the trial court held Robert in civil contempt, ordering him to thereafter remain incarcerated until he paid in full the amounts listed in the seven violations, as well as attorneys fees and costs. In

1. The respondent is The Honorable James D. Squier of the 312th District Court of Harris County. The underlying lawsuit is *Jody J. Lozano v. Robert E. Lozano, Jr.,* No.2005-18550 (312th Dist. Ct., Harris County, Tex.).

2. A petition for writ of mandamus is the proper vehicle for relief when, as here, relator is not confined. *In re Long,* 984 S.W.2d 623, 625 (Tex.1999) (stating that relief from contempt order not involving confinement is by petition for writ of mandamus and citing *Rosser v. Squier,* 902 S.W.2d 962, 962 (Tex.1995) (stating that habeas corpus relief is not available if there is no physical restraint)).

addition, the trial court entered a judgment against Robert for a maintenance arrearage under the prior decree.

■ Robert immediately paid the sums due under the seven violations, as well as the attorneys fees and costs. On May 2, after a hearing, the trial court found that Robert had purged himself of contempt and "suspended his sentence."[3] On May 17, Jody filed a second petition for enforcement, seeking "revocation of the suspension," on the basis that Robert failed to make the May 1 payment on the house note and was continually failing to pay the utilities. On May 23, Robert moved for a new trial on the enforcement of the spousal support. After a hearing on July 6, the trial court denied Robert's motion for new trial, but stated that it would not move forward on Jody's petition for enforcement to allow Robert time to file for "a writ of habeas corpus." This petition for writ of mandamus followed.

Robert asks this Court to direct the trial court to vacate its April 27, 2006 order of contempt and to direct the trial court "to make no further findings of contempt against Relator with respect to the payment of spousal support, house payments, utilities, or any other obligations which are in the nature of a debt."

## Failure to Pay Spousal Maintenance and House Note

■ In his second and third issues, Robert contends that the trial court abused its discretion in holding him in contempt for failure to pay spousal support and for failure to make installment payments on the house note.[4] During the May 2 hearing, the trial court found that Robert had purged himself of contempt by having paid the sums due for violations numbered 1–7 and the attorney's fees as ordered. The only issue remaining appears to be the punitive sentence for criminal contempt.[5]

■ A party may contractually agree to pay spousal maintenance and, once such an agreement is approved by the court and made part of its judgment, the agreement becomes a judgment of the court. *Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979); *Rivera v. Office of Attorney Gen.*, 960 S.W.2d 280, 283 (Tex.App.-Houston [1st Dist.] 1997, no writ). A court-approved contractual agreement for spousal maintenance is enforceable by order of contempt. Tex. Fam.Code Ann. § 8.059 (Vernon 2006). However, it "is enforceable by contempt only to the extent that the support awarded is also authorized by

**3.** The trial court held that "there are no terms of purging that I can announce that he has not at this moment complied with. So his incarceration is suspended." It is unclear which sentence was suspended—the coercive, the punitive, or both. Because Robert purged himself of all the violations stated in the order of civil contempt, there were no violations remaining to support the coercive sentence. As to the sentence for criminal contempt, one generally cannot be "purged" by making subsequent payment; hence, there is no resulting "suspension." *See In re Sheshtawy*, 154 S.W.3d 114, 126 (Tex.2004); *In re Villanueva*, 56 S.W.3d 905, 909 n. 2 (Tex.App.-Houston [1st Dist.] 2001, orig. proceeding). However, there is no order of commitment in the rec-

ord, and Robert states that he is not and has not been confined.

**4.** Robert also contends that the utilities payments Jody currently seeks to enforce by contempt are in the nature of a debt and thus are not enforceable by contempt. However, the order Robert asks this Court to vacate, and the sole order in the record before this Court, is the April 27, 2006 order, which does not compel Robert to pay utilities payments. We do not address the propriety of Jody's new claims for utilities payments because there is no order in the record before us regarding such claims.

**5.** *See supra* note 3.

the Texas Family Code and Constitution." *Ex parte Hall,* 854 S.W.2d 656, 656 (Tex. 1993). *But see Gorena,* 595 S.W.2d at 845 (stating in earlier case law that enforceability of contempt order did not depend on statutory authority). Generally, the Family Code requires the trial court to limit the duration of the maintenance to three years from the date of the order and to further limit the duration to the shortest reasonable period that will allow the spouse seeking maintenance to obtain appropriate employment or skills to meet minimum needs, unless the ability of the spouse to so provide is substantially diminished. TEX. FAM.CODE ANN. § 8.054.

Here, pursuant to the temporary orders, Robert must pay Jody "as temporary spousal support $1,384 per month which is paid as a salary from the family owned business . . . until further order of this Court." The final decree orders that "[t]he basic Temporary Orders in this case remain in full force and effect, until the house . . . is sold and closing has occurred, SAVE AND EXCEPT the following provisions: [health insurance, cell phone, toll tag]." Hence, Robert's obligation is to pay spousal support to Jody in the form of a salary from Robert's business "until further order" by the trial court, and this provision will remain in effect "until the house . . . is sold."

First, the limiting factor imposed on Robert's obligation is not authorized by the Family Code. The Family Code provides that maintenance is to be limited to the shortest period possible that will allow the receiving spouse to develop job skills and provide a reasonable level of self-support. TEX. FAM.CODE ANN. § 8.054. There is no statutory authorization for limiting spousal maintenance by, as here, the sale of a house.

In addition, because the duration of Robert's obligation to pay spousal mainte-nance is without meaningful limitation, it exceeds that authorized by the Family Code. The Family Code mandates that maintenance must be limited to three years unless the court finds that the ability of the recipient spouse to provide self-support is substantially diminished. *See* TEX. FAM.CODE ANN. § 8.054(a), (b). There is nothing in the record before us indicating any such finding. The decree and the temporary orders it extends provide that Robert is to pay spousal support until the house is sold. However, there is no language in the decree or temporary orders that compels Jody ever to sell the house.

The record shows that the Lozano's divorce became final on December 1, 2005, but it was not until March 22, 2006 that Jody first put the house on the market— listing it with the real estate agency that employs Jody and for an amount well above the home's appraised value. On April 18, 2006, at the hearing on Jody's first petition for enforcement, Jody testified that, although she has the house on the market, there is no language in the decree that orders her to sell the house. In addition, the trial court explained to Robert that "technically the way this decree was written she could take it off the market and, yeah, you could pay her bills for the next three or five years. . . . These papers were pretty open-ended. She could stay in that house indefinitely while you are paying for it." At the contempt hearing on May 2, 2006, Jody's counsel stated that Jody need not ever sell the house because "there was nothing to force her to do so, so she could just not sell it at all if she didn't want to."

■ The wisdom of the parties' agreement is not before this Court; rather, the sole issue is whether the agreement is enforceable by contempt. We conclude that Robert's obligation to pay maintenance is not limited to three years and is

without substantive limitation because it rests on a contingency that may never occur. The discussion in the trial court supports this conclusion. Hence, the maintenance ordered goes beyond that authorized by the Family Code, which permits an indefinite duration of support only if there has been a finding that the ability of the recipient spouse to provide for his or her minimum reasonable needs through employment is substantially or totally diminished. *See* TEX. FAM.CODE ANN. § 8.054(a), (b); *Pickens v. Pickens*, 62 S.W.3d 212, 217 (Tex.App.-Dallas 2001, pet. denied). Because Robert's obligation to pay spousal maintenance exceeds that authorized by the Family Code, it is not enforceable by contempt. *See Hall*, 854 S.W.2d at 656, 658. Hence, those portions of the order that hold Robert in contempt for failure to pay spousal maintenance (violations enumerated 1–5 in the order) are void. *See In re Villanueva*, 56 S.W.3d 905, 908–10 (Tex.App.-Houston [1st Dist.] 2001, orig. proceeding) (holding those portions of contempt order void that are beyond trial court's power to enter). When, as here, each violation is listed separately and is assessed a separate punishment, the invalid portion is severed from the order, and the valid portion stands. *See In re Henry*, 154 S.W.3d 594, 598 (Tex.2005); *Ex parte Williams*, 866 S.W.2d 751, 753 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding).

▮ With respect to Robert's related third issue, that the trial court erred in holding him in contempt for his failure to make two house payments (violations enumerated 6 and 7), it is well-settled that an obligation in a divorce decree to make installment payments on a home mortgage is not enforceable by contempt because such enforcement amounts to imprisonment for failure to pay a debt, in violation of Article I, Section 18, of the Texas Constitution. *See* TEX. CONST. art. I, § 18;

*Whitt v. Whitt*, 684 S.W.2d 731, 735 (Tex. App.-Houston [14th Dist.] 1984, orig. proceeding); *Ex parte Duncan*, 462 S.W.2d 336, 338 (Tex. Civ. App.-Houston [1st Dist.] 1970, orig. proceeding). Hence, those portions of the order that hold Robert in contempt for failure to pay two installments on the house note (violations enumerated 6 and 7) are void and severed from the remaining order. *See Henry*, 154 S.W.3d at 598; *Williams*, 866 S.W.2d at 753; *Whitt*, 684 S.W.2d at 735.

We conclude that none of the violations enumerated in the order are punishable by contempt, and thus no contemptuous acts remain to support the April 27, 2006 order. We need not reach the issues of whether the underlying decree lacked specificity, whether the trial court erred in arriving at a judgment not supported by the pleadings, or whether the trial court erred in denying Robert's motion for new trial.

### Conclusion

We hold that the trial court abused its discretion in holding Robert in contempt for failure to pay spousal maintenance and for failure to pay installments on the house note. Accordingly, we conditionally grant Robert's petition for writ of mandamus and direct the trial court to vacate its April 27, 2006 order of contempt. Our writ will issue only if the trial court fails to comply with this order.