**In re Delis B. PIERRE.**

**No. 08-00-00501-CV.**

Court of Appeals of Texas, El Paso.

Feb. 15, 2001.

John Cook, Cook, Cantacuzene & Higdon, P.C., Midland, for Relator.

Edward T. Garza, Midland, for Respondent.

Keith Wilson, Asst. Atty. Gen., Midland, for Real Party In Interest-Attorney General.

Before Panel No. 2 BARAJAS, C.J., McCLURE and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an original proceeding in habeas corpus. Relator, Delis B. Pierre, brings two issues: (1) that the trial court abused its discretion by holding him in contempt despite abundant evidence that he had an inability to pay the child support ordered; and (2) that the trial court abused its discretion in placing terms and conditions of community supervision that are not authorized by statute.

## I. SUMMARY OF THE EVIDENCE

Relator fathered a child with Appellee, Bethany L. Vicars. He was ordered to pay child support to Appellee on a monthly basis in August 1998. Relator was also ordered to pay retroactive child support in the amount of $4,400 plus interest, at the rate of $330 per month. Relator failed to pay the full amount of the ordered support in October 1998 and November 1998. Thereafter, Relator failed to pay any amount of child support from December 1998, until Appellee filed her Amended

Motion for Enforcement of Child Support in September of 1999. On October 1, 1999, the trial court held a hearing on Appellee's motion. On October 20, 1999, the trial court entered its order holding Relator in contempt. Relator was placed on community supervision and judgment was entered against him in the amount of $7,276.93 for the arrearages and interest. He was also ordered to pay attorney's fees. Relator filed an appeal from the underlying cause of action and thereafter filed this petition for writ of habeas corpus.

## II. DISCUSSION

Relator brings two issues: (1) that the trial court abused its discretion by holding him in contempt despite abundant evidence that he had an inability to pay the child support ordered; and (2) that the trial court abused its discretion in placing terms and conditions of community supervision that are not authorized by statute. We address them in turn below.

### A. Inability to Pay

■ A trial court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). In some instances, the abuse of discretion standard overlaps the traditional sufficiency review. Several courts have concluded that when the trial court's ruling on the merits is reviewed under an abuse of discretion standard, the normal sufficiency of the evidence review is part of the abuse of discretion review and not an independent ground for reversal. *See Crawford v. Hope*, 898 S.W.2d 937, 940–41 (Tex.App.—Amarillo 1995, writ denied)(when standard of review is abuse of discretion, factual and legal sufficiency are not independent grounds of error); *accord, Thomas v. Thomas*, 895 S.W.2d 895, 898 (Tex.App.—

Waco 1995, writ denied); *In the Matter of the Marriage of Driver*, 895 S.W.2d 875, 877 (Tex.App.—Texarkana 1995, no writ); *Wood v. O'Donnell*, 894 S.W.2d 555, 556 (Tex.App.—Fort Worth 1995, no writ); *In the Interest of Pecht*, 874 S.W.2d 797, 800 (Tex.App.—Texarkana 1994, no writ); *but see Matthiessen v. Schaefer*, 897 S.W.2d 825, 828 (Tex.App.—San Antonio 1994)(Duncan, J., dissenting)(appellate court should review award of attorney's fees by normal sufficiency of evidence standard, and not subsume sufficiency of evidence into abuse of discretion standard), *rev'd on other grounds*, 915 S.W.2d 479 (Tex.1995).

We have previously agreed with Justice Duncan's dissenting opinion in *Matthiessen*. In *Lindsey*, 965 S.W.2d 589 (Tex.App.—El Paso 1998, no writ), we addressed the conflict between the traditional sufficiency review and the abuse of discretion standard in the context of a child support modification and determined that once it has been determined that the abuse of discretion standard applies, an appellate court should engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *See Lindsey*, 965 S.W.2d at 592. The traditional sufficiency review comes into play with regard to the first question; however, our inquiry cannot end there. *See id.* We must proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *See id.* Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable. *See id.*

■ Relator argues that Section 157.008(c) provides for the affirmative defense of inability to pay support in the amount ordered and recognizes that he carries the burden to prove this affirma-

tive defense beyond a preponderance of the evidence. *See* TEX.FAM.CODE ANN. § 157.008(c)(1)(Vernon 1996).[1] He maintains that all of the evidence presented indicated that he was unable to pay the arrearage and support payments.

Relator testified that he injured his back, neck, shoulders, and groin while working as a welder on October 18, 1997. He admitted that the child support was due October 1, 1997, and this was prior to his injury. Relator stated that he "was out of work off and on" and did not have the money at the time his child support obligation was due. Relator also testified that he moved in early October 1997, and had to pay rent and a deposit in the amount of $1,200. He stated that he was unemployed for three to four months before he started receiving disability payments and he was trying "to make ends meet." His worker's compensation checks were approximately $400 a week. Relator testified that he did not pay child support at that time because he was so far behind on bills. He stated that he realized he owed the money to support his daughter, but he did not have the money due to the on-the-job injury.

Relator had surgery in June 1998, and again in January 1999. He introduced a note from his doctor dated September 30, 1999, the day before the hearing, that stated he was not allowed to work pending a follow-up appointment with his surgeon in San Antonio. Furthermore, Relator was incarcerated on a forgery charge from July 7, 1999 to September 16, 1999, and did not receive a worker's compensation check during that time. He could not afford to pay the $1,000 bond. He testified that his monthly expenses were $400 for rent, $35 for water, $15 for gas, $300 for food and basic living costs, and that he made a minimum monthly payment to Midland Memorial Hospital. Relator further testified that he did not own any property that could be sold or mortgaged, that his attempts to get a loan were unsuccessful, and that his sisters could not afford to give him any money. Relator stated that if he did not need another surgery, he could be back at work within a few weeks, but that he would have to be retrained. The injury prohibited him from returning to work as a welder.

Appellee testified that she was unwilling to waive the past amounts owed by Relator. She stated that she worked forty hours a week, was a full-time student, and needed assistance in supporting their child. Appellee also stated that she had no knowledge of Relator's injury.

Considering the standard set forth above, we find that the trial court had sufficient information upon which to exercise its discretion. We further find that the trial court did not err in its application of discretion. We overrule Issue One.

**B. Habeas Corpus**

▮▮▮ This Court has original jurisdiction over habeas corpus proceedings as set forth in TEX.GOV'T CODE ANN. § 22.221(d)(Vernon Supp.2001). An origi-

---

1. Section 157.008(c) provides:

   (c) An obligor may plead as an affirmative defense to an allegation of contempt or of the violation of a condition of community service requiring payment of child support that the obligor:
   (1) lacked the ability to provide support in the amount ordered;
   (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed;
   (3) attempted unsuccessfully to borrow the funds needed; and
   (4) knew of no source from which the money could have been borrowed or legally obtained.
   *See* TEX.FAM.CODE ANN. § 157.008(c).

nal habeas corpus proceeding is a collateral attack on a contempt judgment. *See Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967); *Ex parte Tanner*, 904 S.W.2d 202, 203 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding). The function of a writ of habeas corpus is to secure release from unlawful custody. Thus, it must be shown that the contemnor has undergone a restraint of liberty. *See Ex parte Crawford*, 506 S.W.2d 920, 921 (Tex.Civ.App.—Tyler 1974, orig. proceeding).

Although actual confinement is the typical restraint of liberty, courts have extended the meaning of the term "restraint of liberty" beyond actual imprisonment. The Texas Supreme Court has held that when a contemnor is sentenced to jail and released on bond pending review by habeas corpus, there is sufficient restraint of liberty to justify issuance of the writ of habeas corpus. *See Ex parte Williams*, 690 S.W.2d 243, 244 (Tex.1985). Courts have also extended the meaning of restraint to include probation. In most of these cases, however, the terms of probation include some type of tangible restraint of liberty. *See, e.g., Ex parte Brister*, 801 S.W.2d 833, 834–35 (Tex.1990); *Ex parte Duncan*, 796 S.W.2d 562, 564 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding). One court has held that the requirement of weekly community service over the course of a year constitutes a restraint on one's liberty entitling one to pursue relief by petition for writ of habeas corpus. *See In re Ragland*, 973 S.W.2d 769, 771 (Tex.App.—Tyler 1998, orig. proceeding).

█ Relator argues that the trial court abused its discretion in placing terms and conditions of community supervision that are not authorized by statute. Section 157.211 of the Family Code authorizes the following conditions of community supervision:

(1) report to the community supervision and corrections department officer as directed;

(2) permit the community supervision and corrections department officer to visit the respondent at the respondent's home or elsewhere;

(3) obtain counseling on financial planning, budget management, conflict resolution, parenting skills, alcohol or drug abuse, or other matters causing the respondent to fail to obey the order;

(4) pay required child support and any child support arrearages; and

(5) pay court costs and attorney's fees ordered by the court.

TEX.FAM.CODE ANN. § 157.211 (Vernon Supp.2001). The trial court placed the following requirements on Relator in its order finding him in contempt:

1. that he pay in equal monthly installments of $50.00, by cash, cashier's check, or money order to Bethany Vicars, through the Office of the Attorney General, beginning November 1, 1999 and increasing to the sum of $100.00 per month beginning May 1, 2000 and continuing in the same amount and frequency on the first day of each month thereafter, until he has paid the arrearage in the amount of $2,553.83, including any accrued interest;

2. that he pay court costs, including attorney's fees;

3. that he report to the community supervision and corrections officer as follows:

(a) in person not less than one time a month on the day and at the time specified by the community supervision officer;

(b) that he first report on October 19, 1999 at 1:00 p.m.;

4. that he permit the supervision officer to visit him in his home, work, and elsewhere;

5. that he report each change of address and change of employment to his supervision officer within three working days;

6. that he submit to testing for drugs and alcohol as the supervision officer may direct and pay for the same;

7. that he work faithfully at a suitable employment, as far as possible;

8. that he remain within Midland County, Texas;

9. that he support all of his dependents;

10. that he obtain counseling on drug and alcohol rehabilitation program as the supervision officer may direct and pay for same;

11. that he participate in and complete the L.E.A.P. (Learning, Education, and Assessment Program) as directed by the supervision officer; and

12. that he pay a community supervision fee of $25.00 during the community supervision period.

Relator complains that numbers 5, 6, 7, 8, 9, and 10 are not authorized by Section 157.211 of the Family Code and that these terms and conditions have the effect of placing him in the same situation as a person convicted of a felony offense. He maintains that the provisions found in Section 157.211 are an exhaustive list of conditions and the trial court abused its discretion in placing the above listed conditions upon him. We find condition number six to be beyond the scope of the enumerated terms in Section 157.211 of the Family Code. We further find, that in the absence of any evidence of drug abuse and any correlation to Relator's ability to comply with the clear order of support, the trial court abused its discretion by requiring Relator to submit to drug and alcohol test-ing and ordering him to pay for the same. We sustain Issue Two. Relator's petition for writ of habeas corpus is therefore granted. Furthermore, we reform the trial court's Order Holding Respondent in Contempt by omitting condition number six, that he submit to testing for drugs and alcohol as the supervision officer may direct and pay for the same. We affirm the judgment of the trial court in all other respects.