02-12-145-CV








 




 
 
 
 
 
  
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
 
 




 

 

NO. 02-12-00145-CV

 

 


 
 
 IN
 RE MARK LEE NEWBY
 
 
  
 
 
 RELATOR
 
 


 

----------

ORIGINAL PROCEEDING

----------

OPINION

----------

In
this petition for writ of habeas corpus, relator Mark Lee Newby contends that
the trial court’s order finding him in criminal and civil contempt and
committing him to the Tarrant County Jail for at least twenty-four months is
void.  We hold that the order is void in part and modify it as set forth below.

Background
Facts

The
underlying case is a divorce enforcement suit.  Real party in interest (RPI) Dianne
Marie Uhl filed two motions for contempt and enforcement in the trial court: 
one relating to unpaid child support and health care insurance reimbursements and
the other relating to violations of a protective order.  In the child support
enforcement motion, RPI set forth sixteen alleged counts for failure to pay
child support and health care premium reimbursements, alleged that relator
would likely miss additional payments while the motion was pending, and asked
that the trial court hold relator in both civil and criminal contempt “for a
determinative period of 180 consecutive days, day to day, for each of
his violations.”  [Emphasis added.]

The
trial court heard both motions on March 9, 2012 and found relator guilty of
missing sixteen child support payments and sixteen health care expense
reimbursement payments.  The trial court also found relator guilty of fifty
violations of the protective order.  The trial court sentenced relator to
twenty-four months’ confinement as criminal contempt for the violations.  The
trial court also ordered that relator remain incarcerated thereafter until he
purged himself of civil contempt by performing the following:  (1) pay RPI all
confirmed child support and health care expense reimbursement arrearages in the
amount of $15,426.01 (the past due amounts for all nineteen alleged failures to
pay child support and all nineteen alleged failures to reimburse health care
insurance expenses,[1] plus six percent
statutory simple interest), (2) pay RPI’s attorney $11,421 for attorney’s fees
incurred in prosecuting both enforcement and contempt actions (the child
support and protective order), (3) timely pay each monthly payment of $1500 in
child support as set forth in the decree beginning March 9, 2012, and (4)
timely pay each monthly payment of $93.02 for the child’s health care insurance
beginning March 9, 2012.

Relator
was committed to the Tarrant County Jail that same day.  He filed this petition
for writ of habeas corpus challenging the trial court’s contempt order.

Right to Trial by Jury – Criminal Contempt

          In
his first and second issues, relator contends that the trial court’s order
sentencing him to twenty-four months’ confinement violated his right to a trial
by jury because he did not waive that right.

Although
an absolute right to trial by jury in contempt proceedings does not exist, an
alleged contemnor possesses such a right in criminal contempt cases in which
the punishment assessed is “serious.”  See Muniz v. Hoffman, 422 U.S.
454, 475–77, 95 S. Ct. 2178, 2190–91 (1975); Ex parte Griffin, 682
S.W.2d 261, 262 (Tex. 1984) (orig. proceeding); In re McGonagill, No.
02-07-00034-CV, 2007 WL 704888, at *2 (Tex. App.––Fort Worth Mar. 5, 2007,
orig. proceeding) (mem. op.).  Punishment assessed for criminal contempt beyond
180 days is considered “serious” and may not be assessed unless there was a
jury trial or a jury waiver.  Ex parte Sproull, 815 S.W.2d 250, 250 (Tex.
1991) (orig. proceeding); McGonagill, 2007 WL 704888, at *2.  Section
21.002(b) of the Texas Government Code provides that punishment for a single
act of contempt of court is a fine of not more than $500 or confinement in the
county jail for not more than six months or both.  Tex. Gov’t Code Ann. §
21.002(b) (West 2004).  Punishment within these limits is characterized as
“petty.”  See Ex parte Werblud, 536 S.W.2d 542, 546 (Tex. 1976) (orig. proceeding);
McGonagill, 2007 WL 704888, at *2.

Even
when the offenses are separate and the sentence for each act of contempt is
less than six months, however, the alleged contemnor is nevertheless entitled
to a jury trial if the sentences are aggregated to run consecutively, so as to
result in punishment exceeding six months.  See Ex parte Sanchez, 703
S.W.2d 955, 957 (Tex. 1986) (orig. proceeding); McGonagill, 2007 WL
704888, at *2.  When there is a right to a jury trial, the record must show
that the court informed the alleged contemnor of the right and that the
contemnor affirmatively waived that right.  McGonagill, 2007 WL 704888,
at *2.  A silent record will yield no presumption of waiver. Sproull,
815 S.W.2d at 250; McGonagill, 2007 WL 704888, at *2.  A contempt
sentence in excess of six months that is imposed in violation of the contemnor’s
right to a jury trial is void.  McGonagill, 2007 WL 704888, at *2.

Although
the order finding relator in contempt recites that relator waived his Fifth
Amendment rights after being admonished, it does not state that he waived his
right to trial by jury.  Moreover, the reporter’s record from the hearing on
the contempt motions shows that although the trial court did inform relator of
his right to a trial by jury, it did so midway through the hearing, after RPI
had put on her evidence and immediately before relator was to testify.  See In
re Jones, No. 07-07-00202-CV, 2007 WL 1585146, at *1 (Tex. App.––Amarillo
May 25, 2007, orig. proceeding and order) (concluding that, despite recitation
of waiver of right to jury trial in contempt order, concession by RPI that
relator did not waive his right “prior to commencement of the contempt
proceeding” controlled).  Additionally, the trial court did not ask relator
whether he specifically waived his right to trial by jury, and relator only
clearly communicated his waiver of his Fifth Amendment right to testify about
the child support allegations.  Accordingly, we conclude and hold that the
record shows that the trial court sentenced relator to greater than six months’
confinement in violation of his right to a jury trial and that the criminal contempt
part of the order is therefore void.[2]  See, e.g., McGonagill,
2007 WL 704888, at *2.[3]  We sustain his first and
second issues.

Civil Contempt

Relator also challenges the coercive civil
contempt part of the order on several grounds.

Burden
of proof

Relator contends in his third issue that the
trial court used a clear and convincing evidence standard to weigh the evidence
instead of a beyond a reasonable doubt standard.  Relator has not referred to
any part of the record, and we have found none, supporting this conclusion.  We
overrule his third issue.

Trial
Judge’s Comment

Relator
complains in his sixth issue about the trial judge’s stating, “It’s not the truth,”
in response to relator’s assertion through his counsel that he had responded to
discovery after RPI had presented evidence to the contrary.  According to
relator, the comment runs afoul of article 38.05 of the code of criminal
procedure, which prohibits a judge from commenting on the weight of evidence in
ruling on its admissibility.  Tex. Code Crim. Proc. Ann. art. 38.05 (West
1979).  However, here, whether relator was telling the truth when he told his
lawyer at the enforcement hearing that he had responded to RPI’s discovery
requests goes to the heart of the trial court’s admissibility ruling.  See
Tex. R. Civ. P. 193.6; White v. Perez, No. 02-09-00251-CV, 2010 WL 87469,
at *1–2 (Tex. App.––Fort Worth Jan. 7, 2010, pet. denied) (mem. op.). 
Moreover, the trial judge’s comments were not made before a jury who might have
been influenced by the comment.  See Strong v. State, 138 S.W.3d 546,
553 (Tex. App.––Corpus Christi 2004, no pet.).  Accordingly, we overrule
relator’s sixth issue.

Ability
to Pay

In
his ninth issue, relator contends that he was not afforded a meaningful
opportunity to explain his behavior or present defenses on his behalf.  In the
argument section of his brief, he also claims that he is unable to pay the
amounts the trial court ordered him to pay to purge his contempt, and he
specifically complains about having to pay the entire arrearage of $15,426.01
past due child support.  Because relator never pled the affirmative defense of inability
to pay in relation to the child support enforcement motion, he has failed to
preserve it.  See Tex. Fam. Code Ann. § 157.008(c) (West 2008); In re
J.M.M., 80 S.W.3d 232, 251 (Tex. App.––Fort Worth 2002, pet. denied), disapproved
of on other grounds by In re J.F.C., 96 S.W.3d 256, 267 & n.39 (Tex.
2002).  Moreover, the trial court found that relator had either failed or
refused to answer discovery, despite apparently representing to his
court-appointed counsel that he had answered discovery before the trial court
appointed her.  Thus, the trial court prohibited relator from presenting
evidence of his inability to pay child support in the amount ordered in
relation to the charges of civil contempt.  See Tex. R. Civ. P. 193.6; White,
2010 WL 87469, at *1–2 (holding that because rule of civil procedure 193.6’s
exclusion of evidence requirement for failure to answer discovery is automatic
absent a showing of good cause or lack of prejudice, trial court’s imposition
of such a sanction is not reviewed under TransAmerican analysis).[4] 
We overrule relator’s ninth issue.

Modification
of Amount Due to Purge Civil Contempt

In his tenth and eleventh issues, relator
challenges the civil coercive contempt part of the order that requires him to
pay $11,421 in attorney’s fees and $15,426.01 in past due child support and
health care reimbursement fees to purge himself of contempt.

RPI
alleged at the hearing that relator failed to pay the following child support
payments:

●        September – November 2010
$4,500 ($1,500 per month);

●        December 2010 – November 2011
$2,700 ($225 per month); and

●        December
2011 – March 2012 $6,000 ($1,500 per month).[5]

She
also alleged that relator failed to reimburse her for the following health care
insurance expenses:

●        September
2010 – March 2012 $1,767.38 ($93.02 per month).

RPI
also introduced evidence that the total amount of child support arrearage and
health care insurance reimbursement, from September 2010 through March 2012,
plus statutory simple interest of six percent, totaled $15,426.01.

          The
trial court held relator in contempt for failing to pay the December 2010
through March 2012 child support and health care reimbursement payments only;
it found relator not guilty for failing to pay the September through November
2010 payments.  However, the trial court included the September through
November 2010 missed payments in the total child support and health care
reimbursement arrearage that it required relator to pay to purge himself of the
civil contempt.  In other words, even though the trial court found relator not
guilty as to those three months (September through November 2010), it
nevertheless required relator to pay the entire arrearage of $15,426.01 that
included missed payments for those months to purge himself of contempt for
missing the December 2010 through March 2012 payments.

Relator
could have been properly subject to coercive confinement only until he paid the
amount for which he was actually held in contempt, $10,188.32 ($8,700 child
support plus $1,488.32 health care reimbursement).[6]
 See In re Corbett, No. 02-11-00430-CV, 2012 WL 386744, at *2 (Tex.
App.––Fort Worth Feb. 8, 2012, orig. proceeding) (mem. op.).  Thus, the trial
court erred by ordering relator to pay $15,426.01 to purge himself of the civil
contempt.  See id.  Accordingly, we must decide the proper remedy for
this error.

In In
re Corbett, the trial court held the relator in contempt for twelve instances
of nonpayment of child support totaling $741.66, but it ordered him to pay an
arrearage of $21,835.40 to purge himself of the contempt (277 missed payments
as alleged).  Id. at *2. In other words, in Corbett, as in this
case, the trial court conditioned the relator’s release on paying more than the
amount the trial court had found the relator in contempt for failing to pay.  Instead
of modifying the amount that the relator would have to pay to purge himself of
the civil contempt, this court in Corbett voided the entire civil
contempt judgment, relying on a supreme court case, Ex parte Davila, 718
S.W.2d 281, 282 (Tex. 1986) (orig. proceeding).  Corbett, 2012 WL
386744, at *2.

The
facts in Davila that required voiding the entire coercive contempt part
of the order in that case are slightly different than those here and in Corbett. 
In Davila, the Supreme Court held that when a trial court finds multiple
instances of contempt, but one of those instances of contempt is invalid, and
requires relator to pay a lump sum to be released for all of the instances of
contempt, even the invalid one or ones, the entire order is void because the appellate
court cannot tell the dollar amounts the trial court had attributed to each
count of contempt.  Davila, 718 S.W.2d at 282.  What happened here and
in Corbett is more like what happened in In re Patillo, 32 S.W.3d
907 (Tex. App.––Corpus Christi 2000, orig. proceeding), and Ex parte
Williams, 866 S.W.2d 751 (Tex. App.––Houston [1st Dist.] 1993, orig.
proceeding).  In those cases, the appellate courts modified the civil coercive
contempt parts of the orders to delete the additional amounts that the relators
were required to pay to purge themselves of contempt, retaining only the
amounts for which the relators were actually held in contempt, because the
courts were able to calculate what the purging amounts should be.  Patillo,
32 S.W.3d at 909 (“Where a trial court lists each failure to comply with an
order separately and assesses a separate punishment for each failure to comply,
only the invalid portion of the contempt order is void and the remainder of the
contempt order is enforceable.”); Williams, 866 S.W.2d at 753.

Accordingly,
we believe that although Corbett was correct in its determination that
part of the civil contempt order in that case was void, we should have modified
the civil contempt part of that order to reflect the amounts for which the
relator was actually held in contempt rather than hold the entire civil
contempt part of the order void under Davila.  Davila is
factually distinguishable from this case; this case is more similar to Patillo
and Williams, both of which rely on an exception to Davila.[7]  Therefore, having
found error, we will modify the civil coercive contempt part of the order to
reflect the correct child support and health care reimbursement arrearage for
which relator was actually held in contempt, $10,188.32.

Attorney’s
Fees

The
attorney’s fees included in the purging amount are a different matter,
however.  RPI’s counsel testified that he earned reasonable and necessary
attorney’s fees of $7,352.50 for the child support enforcement and $3,610 for
the protective order enforcement.  He also testified that his firm had paid
$491.15 in costs for the child support enforcement and $59.25 in costs for the protective
order enforcement.  The trial court awarded RPI a lump sum of $11,421 for
“attorney[’]s fees.”  However, that amount is greater than the two sets of
attorney’s fees to which RPI’s counsel testified, but less than both sets of
attorney’s fees and costs added together.  Because we are thus unable to
determine how the trial court allocated and determined the total attorney’s fees
amount, this part of the civil coercive contempt order is void.  See In re
Henry, 154 S.W.3d 594, 598 (Tex. 2005) (orig. proceeding); Davila,
718 S.W.2d at 282.  We sustain relator’s tenth and eleventh issues in part, to
the extent they complain about relator’s being required to pay attorney’s fees,
future child support and health care reimbursements, and amounts for which
relator was never held in contempt.

Conclusion

Having
held that the part of the trial court’s order holding relator in criminal
contempt and sentencing him to twenty-four months’ confinement is void, we
strike that part of the order.  Additionally, having found that parts of the
order holding relator in civil contempt and ordering him confined until he
purges himself of the contempt are void, we modify the civil contempt part of
the order by striking subparagraphs b through d, and we amend subparagraph a of
that part of the order as follows:

Respondent shall immediately
pay to Petitioner by and through the Texas State Disbursement Unit located at
P.O. Box 659791, San Antonio, Texas 78265-9791 the confirmed child support
arrearages up through March 9, 2012, and the confirmed arrearages of health
insurance premiums up through March 9, 2012, all together with interest thereon
in the total of $10,188.32.[8]

 

Thus, we deny relator habeas relief regarding the remaining,
civil coercive contempt part of the order as modified.

 

PER CURIAM

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and MEIER, JJ.

 

DELIVERED:  June 6, 2012








 









[1]The trial court found relator
not guilty of failing to pay the first three child support payments and health
care insurance reimbursement payments alleged by RPI, but it nevertheless found
relator guilty of missing three payments while the motion was pending:  January
through March 2012.





[2]Because relator’s fourth,
fifth, seventh, and eighth issues relate solely to the protective order
enforcement motion (and therefore only the criminal contempt part of the trial
court’s order), we need not address them.  See Tex. R. App. P. 47.1.





[3]RPI cites four cases in
her response for the proposition that instead of holding that the contempt
order is void, we may modify it instead so that the sentence does not exceed
180 days.  See In re Villanueva, 56 S.W.3d 905 (Tex. App.––Houston [1st
Dist.] 2001, orig. proceeding); In re Pierre, 50 S.W.3d 554 (Tex.
App.––El Paso 2001, orig. proceeding); In re Patillo, 32 S.W.3d 907
(Tex. App.––Corpus Christi 2000, orig. proceeding); Ex parte Balderas,
804 S.W.2d 261 (Tex. App.––Houston [1st Dist.] 1991, orig. proceeding). 
However, none of these cases controls:  Villanueva and Patillo
are both civil contempt cases, Pierre involves an improper condition of
community supervision, and in Balderas, the trial court’s written order
did not conform to its oral pronouncement of sentence.  Villanueva, 56
S.W.3d at 910; Pierre, 50 S.W.3d at 557–59; Patillo, 32 S.W.3d at
909–11; Balderas, 804 S.W.2d at 263–64.  On June 1, 2012, relator filed
a Request to Conform Contempt Order(s) and Sign Release Order(s) conceding that
the criminal contempt part of the order should be modified; however, because of
our disposition, we deny that request as moot.





[4]The trial court did let
relator produce some evidence to defend the criminal contempt charge.  The
trial court took judicial notice of relator’s indigency in the divorce appeal
(this court reversed the trial court’s order sustaining a contest to relator’s
affidavit of indigency), and the trial court appointed counsel for the motion
to enforce child support.  In addition, relator testified that he was operating
a business, was attending school on a grant and scholarship, that he was late
on his rent, and that he was receiving food stamps.  However, he also testified
that $225 a month was the correct amount he should be paying for child support,
even though he had only made two $225 payments (directly to RPI and not through
the child support unit as ordered), in January and February 2012.  In addition,
RPI testified that she knew relator was receiving income from oil and gas
royalties and that she had seen him driving two different Mercedes automobiles,
a 2000 Buick, and a Ford Expedition since 2010.  Relator testified that all of
the vehicles but the Expedition had been repossessed and that he had made a
down payment and two note payments on the Expedition.  Finally, RPI presented
evidence that relator had received a check in May 2011 for $6,000 and a check
in July 2011 for $7,800 from the sale of property; relator did not explain what
happened to the $7,800, and although he testified that the $6,000 was a loan
which he had not repaid, the trial court was not required to believe his
testimony.  This case then is more akin to In re Corder, 332 S.W.3d 498,
502–03 (Tex. App.––Houston [1st Dist.] 2009, orig. proceeding), than Ex
parte Dustman, 538 S.W.2d 409, 410 (Tex. 1976) (orig. proceeding).





[5]In addition to the sixteen
counts specifically alleged in RPI’s motion to enforce, RPI also alleged that
relator was likely to miss additional payments in the future while the case was
pending; relator missed the January through March 2012 payments after RPI filed
her motion but before the hearing.  See Tex. Fam. Code Ann. § 157.002(e)
(West 2008).





[6]The decree (as recited in
the contempt order) ordered that “any direct payments” of child support to RPI
“are deemed in addition to and not in lieu of the support ordered in this
order.”





[7]The trial court’s order
also requires relator to pay all future accruing child support and health care
reimbursement payments to purge himself of the contempt.  Unlike the past due child
support payments and health care reimbursements above, relator cannot be held
in contempt indefinitely for failing to make future payments as they come due,
and those payment orders are therefore void.  See In re Anascavage, 131
S.W.3d 108, 112 (Tex. App.––San Antonio 2004, orig. proceeding).





[8]Relator’s separate appeal
from the part of the trial court’s order that assesses arrearages for the child
support and health care insurance remains pending in cause number
02-12-00134-CV.